UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENETH BAKER AND JENNIFER BAKER<br><br>Plaintiffs,<br><br>vs.<br><br>BAKER HUGES OILFIELD OPERATIONS, INC.,<br><br>Defendant | 3:16-cv-00038 JWS<br><br>ORDER AND OPINION<br>[Re: Motion at Docket 66] |

## I. MOTION PRESENTED

At docket 66, Defendant Baker Hughes Oil Field Operations, Inc. ("Defendant") filed a Fed. R. Civ. P. Rule 56 Motion for Summary Judgment. Plaintiffs Kenneth and Jennifer Baker ("Plaintiffs") filed a response at docket 76. Defendant filed a reply at docket 85.

Oral argument was not requested

## II. BACKGROUND

Defendant owns and operates a cement blending plant in Nikiski and accepted legal responsibility for any discharge of hazardous waste by its predecessor at the site, BJ Services Company U.S.A. LLC.[1] Defendant held a blended dry cement consisting of Portland Cement and other materials in large silos on the cement blending

---

[1] Depo. Jason Goodwin, p. 14, ll. 1-9.

1

plant property.[2] Defendant required additional space to accommodate a new customer's order, so Defendant's personnel decided to empty one or more of its storage silos by using a pressure operated system to blow the product onto the back of Defendant's property.[3]

Plaintiffs own a house on the south side of Defendant's cement blending property. Plaintiffs seek damages for diminution of the value of their property and Mrs. Baker's health problems resulting from Trespass, Landowner Liability/Negligence, Strict Liability pursuant to Alaska's pollution statute, AS 46.03.822, .824 (which provides for strict liability for damage to property or person due to pollution, AS 46.03.824), and Nuisance, all stemming from the discharge of the storage silos. Plaintiffs have also requested an award of punitive damages.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] However, summary

---

[2] Depo. Jason Goodwin, p. 19, ll. 2-21; p. 100, l. 20 – p. 101, l. 7.
[3] Depo. Jason Goodwin, p. 32, l. 20 – p. 34 l. 5; p. 35, l. 1 – p. 36, l. 17; p. 51, l.18 – p. 52, l.10; p. 94, ll. 5-24.
[4] Fed. R. Civ. P. 56(a).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *Id.*

2

judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[8] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[9] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[11] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

## IV. DISCUSSION

The consistent error in the Motion for Summary Judgment is that Defendant draws all inferences in favor of the moving party rather than the non-moving party. Conversely, Plaintiff often provides scant support for its positions.

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[8] *Id.* at 323.
[9] *Id.* at 323-25.
[10] *Anderson,* 477 U.S. at 248-49.
[11] *Id.* at 255.
[12] *Id.* at 248-49.

3

## A. Trespass

Alaska recognizes that, "Trespass is an unauthorized intrusion or invasion of another's land."[13] The Alaska Supreme Court also notes that the definition includes "subsurface areas," citing to the Restatement (Second) of Torts § 159 (1965).[14] The Restatement specifies that "a trespass may be committed on, beneath, or above the surface of the earth."[15] Comment (f) to the Restatement clarifies that "an unprivileged intrusion into the space above the surface of the earth, at whatever height above the surface, is a trespass." Damages are not necessary for a trespass claim. "A plaintiff alleging trespass need not demonstrate actual damage."[16]

In *Hill v. Sw. Energy Co.*, the 8th Circuit examined a case involving discharge of fracking material that potentially migrated across to the neighboring property.[17] The plaintiffs in the case did not present direct evidence that the material migrated. Nonetheless, the court held that the plaintiffs presented:

---

[13] *Parks Hiway Enterprises, LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 664 (Alaska 2000).
[14] *Id.*
[15] Restatement (Second) of Torts § 159 (1965); *see also Shell Offshore Inc. v. Greenpeace, Inc.*, No. 3:12-CV-00042-SLG, 2012 WL 1931537, at *11 (D. Alaska May 29, 2012) (citing to the Restatement and noting violation of airspace is trespass because "a trespass may be committed on, beneath, or above the surface of the earth.").
[16] *Van Scoy v. Shell Oil Co.*, No. C 93-4383 FMS, 1995 WL 381891, at *5 (N.D. Cal. June 16, 1995), *aff'd*, 98 F.3d 1348 (9th Cir. 1996). The court did find an exception to the general rule "for overflight of aircraft. If the common law principle was strictly followed, any overflight at all, even one that caused no appreciable interference with the use or enjoyment of the land below, would be a trespass. To guard against this consequence, the Restatement of Torts has adopted the sensible position that only invasion or intrusion of air space within the immediate reaches of land is trespass, and then only if it causes substantial interference with the land." *Id.* The exception is not applicable in this case because the alleged trespass does not involve overflight of aircraft.
[17] 858 F.3d 481 (8th Cir. 2017).

4

> [E]vidence that could support a reasonable inference that the fracking waste migrated across their property line. These facts, while thin, enable a jury to draw a reasonable inference that 7.6 million barrels of waste, poured into an area capable of holding no more than 1.1 million barrels, migrated 180 feet to cross the property line. This reasonable inference creates a genuine issue of material fact, precluding summary judgment.[18]

The potential for migration was sufficient to support denying summary judgment, even without direct evidence.

Similar to the facts in *Hill*, this case deals with the potential migration of material across a property line. The primary distinction is that the migration occurred in the air, rather than underground. On October 16, 2014, Defendant's employees discharged several hundred tons of blended dry cement consisting of Portland Cement and other materials.[19] Defendant's personnel used a pressure operated system to blow the product onto the back of the Defendant's property.[20]

Golder Associates was first on Defendant's property to observe the discharged waste on October 28, 2014.[21] By the time Golder Associates observed the waste, "Water had come in contact with the material causing the cement to harden and form a crust over most of the disposal area."[22] Golder Associates was retained by Defendant to "provide field oversight and documentation of the waste removal."[23]

---

[18] *Id.* at 488.
[19] Aff. Stephen P. Laitinen, Ex. 1, p. 2.
[20] Depo. Jason Goodwin, p. 32, l. 20 – p. 34 l. 5; p. 35, l. 1 – p. 36, l. 17; p. 51, l.18 – p. 52, l.10; p. 94, ll. 5-24.
[21] Aff. Stephen P. Laitinen, Ex. 1, p. 1.
[22] *Id.*
[23] *Id.*

Emerald Alaska, Inc. ("Emerald") conducted the waste removal starting on November 4, 2014.[24] "A minimal amount of water was used to control dust during the waste removal."[25] In addition to solid waste, "4 [cubic yards] of silica sand and 15 [cubic yards] of cement powder were collected and placed in super sacs."[26] Air sampling occurred at six stations on days when Emerald disturbed material.[27] Forty-seven total samples were analyzed, and one contained quartz silica at a level below permissible exposure limits.[28]

On June 3, 2015, the Alaska Department of Environmental Conservation, based on an October 23, 2014 site visit, a November 2, 2014 follow up visit, and the testing results provided by Defendant, determined that the dumping was not an environmental threat but did pose an air quality issue.[29] Mr. Baker noted that dust from the cement was blown through the air and into their home.[30] Mrs. Baker remembers seeing a small amount of cement dust on her vehicle and on the ground.[31] Defendant did not make any effort to remove cement dust from surrounding trees, bushes, and structures.[32] The evidence is sufficient to allow a reasonable jury to draw an inference that some amount of several hundred tons of blended dry cement drifted by air when

---

[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at p. 2.
[28] *Id.*
[29] Memo. In Support of Motion *in Limine*, Ex. 7.
[30] Depo. Mr. Baker p. 28, ll. 7-14.
[31] Depo. Mrs. Baker p. 83, ll. 6-12.
[32] Depo. Jason Goodwin p. 82, ll.12-17.

blasted out on the back of Defendant's property between October 16 and October 28, 2014 (the first date the cement was categorized as crusted over) or November 2, 2014, when AEDC determined that Defendant's dumping presented an air quality issue or November 4, 2014, the earliest date an air sample could have been taken.

Defendant further claims that Plaintiff cannot demonstrate actual damages.[33] As noted above, trespass does not necessarily require a finding of damage. Nonetheless, Plaintiffs have presented evidence of potential damages

Barbra Belluomini is presented as Plaintiffs' expert witness as to damages from trespass. Ms. Belluomini is a resident of Soldotna.[34] She worked at Derry & Associates in Kenai from 2005 to 2016 where she was trained and worked as a real estate appraiser.[35] She has been a member of the Appraisal Institute since 2005[36] and became a certified real estate appraiser in 2008.[37] She has worked at Reliant, LLC since February 2017.[38]

---

[33] Defendant inaccurately cites *Andersen v. Edwards*, 625 P.2d 282 (Alaska 1981) and *Wernberg v. Matanuska Electric Association*, 494 P.2d 790 (Alaska 1972), for the proposition that the proper measure of damages is diminution of value. That is not an accurate description of the holding in either case. The Alaska Supreme Court explained in *Anderson* that in *Wernberg* the "court approved a jury instruction which allowed the jury to apply either the diminution in value or the value of trees measure of damages. This holding, however, did not foreclose the possibility of a cost of restoration instruction in an appropriate case." 625 P.2d at 288. The court then held "the appropriate rule is that if the cost of restoring the land to its original condition is disproportionate to the diminution in the value of the land caused by the trespass, the restoration measure of damages is inappropriate unless there is a 'reason personal to the owner' for restoring the original condition." *Id.* (citing Restatement (Second) of Torts § 919, comment (b) (1977)).
[34] Depo. Ms. Belluomini, p. 4, l. 22.
[35] Depo. Ms. Belluomini, p. 7, l. 11 – p. 8, l. 24.
[36] Depo. Ms. Belluomini, p. 9, ll. 14-19.
[37] Depo. Ms. Belluomini, p. 7, ll. 11-13.
[38] Depo. Ms. Belluomini, p. 7, l. 2 – p. 8, l. 24.

Ms. Belluomini did some research on stigma in the Kenai Peninsula,[39] reviewed research by three associates based on contaminated properties in the Seattle area,[40] reviewed an analysis of a contaminated property in Anchorage,[41] reviewed the Appraisal of Real Estate 14th Edition,[42] and researched deed restrictions.[43] The scope and conclusion of the expert report she helped produce was limited to "any property that has past contamination or [ ] remediat[ion] may have a diminution in value associated with it regardless of location."[44] Ms. Belluomini then conducted additional research specific to Alaska, determining that contaminated and remediated properties have a wide range of diminution of value.[45] Her testimony speaks specifically to the diminution of value from public perceptions of health risks and stigma associated with potentially contaminated land and thus is admissible. Ms. Belluomini presents sufficient evidence that there is some diminution of value when a property is stigmatized by proximity to a hazard or hazardous event.

**B. Nuisance**

Defendant claims that Plaintiffs cannot demonstrate that cement dust found on the Plaintiffs' property was from Defendant's cement dumping. As outlined above, there is sufficient reason to believe that a jury can make a reasonable inference that

---

[39] Depo. Ms. Belluomini, p. 21, l. 23 – p. 22, l. 6.
[40] Depo. Ms. Belluomini, p. 18, ll. 7-17.
[41] Depo. Ms. Belluomini, p. 36, ll. 3-22.
[42] Depo. Ms. Belluomini, p. 22, l. 3.
[43] Depo. Ms. Belluomini, p. 22, ll. 5-9.
[44] Depo. Ms. Belluomini, p. 40, ll. 10-14.
[45] Depo. Ms. Belluomini, p. 41, l. 23 – p. 42, l. 5.

cement dust was blown onto the Plaintiffs' property from Defendant's cement dumping. The reasonable inference, even if thin, is sufficient to create a genuine issue of material fact, precluding summary judgment. [46]

Defendant claims that Plaintiffs must demonstrate that it was specifically the source of the cement dust found on Plaintiffs' property. In support of this assertion, Defendant cites two cases, *Satterfield v. J.M. Huber Corp.*[47] and *Layton v. Yankee Caithness Joint Venture, L.P.*.[48] But, both of these cases dealt with the very real possibility that sources other than the defendant caused the nuisance. In *Satterfield*, the court outlined a number of potential sources including: "(1) second-hand cigarette smoke from plaintiff Johnny Satterfield's smoking habit, (2) dust from the formerly unpaved road in front of plaintiffs' residence, and (3) five active chicken houses within sight of plaintiffs' residence. Also, there is a Goldkist plant, a Toyota plant and a junkyard."[49] In *Layton*, the court noted, "It is well-established that the Pleasant Valley–Steamboat Springs area contains dozens of natural hot springs which emit hydrogen sulfide."[50] Defendant has not presented any evidence that any other party may have created the cement dust that is the subject of this nuisance claim.

---

[46] *Id.* at 488.
[47] 888 F. Supp. 1567 (N.D. Ga. 1995).
[48] 774 F. Supp. 576, 578 (D. Nev. 1991).
[49] 888 F. Supp. at 1571.
[50] 774 F. Supp. at 578.

## C. Mrs. Baker's Personal Injury Claim

"To survive summary judgment on a toxic tort claim for physical injuries, [plaintiff] ha[s] to show that he was exposed to chemicals that could have caused the physical injuries he complains about (general causation), and that his exposure did in fact result in those injuries (specific causation)."[51] Defendant claims that Plaintiff presents no expert witness on causation, thus, Defendant focuses entirely on the evidence of its own expert, Delno Malzhan. But, this ignores the hybrid fact and expert testimony of Plaintiffs' treating physician and expert, Dr. Carlson.[52]

Dr. Carlson is certified in "functional medicine," which includes training in toxicology.[53] Dr. Carlson started seeing Jennifer Baker on May 17, 2016.[54] He took a history and did an examination.[55] He examined a chemical analysis performed by SGS for Tauriainen Engineering of the contaminated discharge located behind Defendant's plant and spoke with an SGS engineer about soil and water testing.[56] He also examined the Material Safety Data Sheet for Portland Cement.[57] Dr. Carlson reviewed a National Institute for Occupational Safety and Health paper on identifying health effects of

---

[51] *Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683 (9th Cir. 2008) (citing *Jaros v. E.I. DuPont* (In re Hanford Nuclear Reservation Litig.), 292 F.3d 1124, 1133 (9th Cir. 2002)).
[52] Defendant perhaps assumed that Defendant's Motion *in Limine* to exclude Dr. Carlson's testimony would be granted. The Motion *in Limine* was denied, and Dr. Carlson's testimony is admissible.
[53] Depo. Dr. Carlson, p. 27, ll. 2-20.
[54] Depo. Dr. Carlson, p. 62, ll. 4-17.
[55] Depo. Dr. Carlson, p. 62, l. 4 – p. 78, l. 6.
[56] Depo. Dr. Carlson, p. 10, ll.16-23.
[57] *Id.*

exposure to crystalline silica, an ingredient of Class G cement.[58] Dr. Carlson indicated that Class G cement contains "five different substances that can cause harm," and Mrs. Baker "was setup to react to substances in the environment."[59] Dr. Carlson has identified a number of Mrs. Baker's medical problems and offers to "explain the pathology of any or all of these problems, and how they were caused or exasperated by her toxicant exposure."[60] Dr. Carlson explained that some of the symptoms Mrs. Baker experiences were related to the hazardous nature of the cement product.[61]

Dr. Carlson's testimony as a treating physician and hybrid fact and expert witness presents sufficient evidence to present a genuine dispute as the material fact of causation.

**D. Mini-CERCLA claim AS 46.03.822**

Defendant claims that AS 46.03.822 does not provide for a private cause of action for personal injury claims. In support of this proposition, Defendant explains that the Alaska Supreme Court has only held that there is a private cause of action for cleanup.[62] But a close reading of *Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc.*, indicates that a private right of action also exists for personal injury.[63] The Alaska

---

[58] Depo. Dr. Carlson, p. 128, l. 6 – p.130, l. 2.
[59] Depo. Dr. Carlson, p. 86, ll. 5-25.
[60] Defendant's Ex. 1, Dr. Carlson's letter dated October 11, 2017.
[61] Depo. Dr. Carlson p. 130, l. 3 – p.131, l. 4
[62] *See Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc.*, 21 P.3d 344 (Alaska 2001).
[63] *Id.* at 346.

Supreme Court conducted a legislative history analysis to determine the existence of a private right of action. The court noted:

> The original version of AS 46.03.822, enacted in 1972, created a cause of action imposing strict liability on polluters who damaged private property:
> > To the extent not otherwise preempted by federal law, a person owning or having control over a hazardous substance which enters in or upon the waters, surface or subsurface lands of the state is strictly liable, without regard to fault, *for the damages to persons or property*, public or *private*, caused by the entry...[64]

Thus, the Alaska Supreme Court recognized that the private right of action under AS 46.03.822 was meant to apply to both damage to the persons and to the property and not just to the property as Defendant now claims.

The court went on to note that, "The act defined 'damages' to include 'injury to or loss of persons or property, real or personal, loss of income, loss of the means of producing income, or the loss of an economic benefit.'"[65] The legislative history once more points to a private action existing for an injury or loss of a person as well as property.

The court then noted that amendments in 1989 and 1991 retained the same private cause of action:

> [T]he legislature also retained AS 46.03.824, a provision *defining damages to include injuries to persons* or property, real or *personal*, and loss of income. The legislature likewise retained the original version of AS 46.03.870, which, as mentioned above, specifically provides that causes of action under section .822 are *not limited to the state*. Moreover, every version of section .822 has subjected polluters of either private or public property to joint and several strict liability.[66]

---

[64] *Id.* (citing Ch. 122, § 1, SLA 1972) (emphasis in original).
[65] *Id.*
[66] *Id.* at 347–48 (emphasis added).

The court illustrates that the private cause of action under AS 46.03.822 for both injuries to person and property is present throughout the legislative history. In fact, the Alaska Supreme Court highlighted in a footnote that "the definition of damages does not expressly include cleanup costs" before finding that the inclusion of cleanup costs in the definition "furthers the legislative purpose."[67] Defendant's conclusion that a private right of action is only available for cleanup costs is inconsistent with the decision by the Alaska Supreme Court in *Laidlaw*. Finally, the court notes, "In sum, this history strongly suggests that the legislature originally contemplated a private cause of action against parties who release hazardous substances."[68] It is clear from a close reading of the Alaska Supreme Court's decision in *Laidlaw* and the legislative history it discusses, that AS 46.03.822 provides a private right of action for personal injury.[69]

**E. Punitive Damages**

Defendant contends that the alleged conduct does not rise to the level of conduct required for punitive damages. AS 09.17.020(b) provides that a "fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct: (1) was outrageous, including acts done with

---

[67] *Id.* at 347 n. 13.
[68] *Id.* at 348.
[69] Defendant also claims that a strict liability claim under AS 46.03.822 requires causation by citing *Parks Hiway Enterprises, LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 667 (Alaska 2000). But the question in that case was whether the vendor of a product could be liable after delivering the product. "Petroleum Sales did not control either Gold Hill's tanks or the fuel when the contamination of Parks Hiway's groundwater occurred. It was therefore not a substantial factor in creating the alleged nuisance and should bear no liability." In this case, the dumping was done by Defendant; there is no vendor liability involved.

13

malice or bad motives; or (2) evidenced reckless indifference to the interest of another person." Thus, either malice or recklessness can support a claim of punitive damages. "A showing of malice is not required. It is sufficient to show that the defendant's conduct amounted to reckless indifference to the rights of others, and conscious action in deliberate disregard of those rights."[70] "In deciding what conduct amount to 'reckless indifference' the Alaska Supreme Court stated that it is 'persuaded by the comments to the Restatement (Second) of Torts § 500, which define reckless disregard of safety.'"[71] The comments to the Restatement (Second) of Torts § 500 explain: "Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others."

On October 16, 2014, Defendant's employees discharged several hundred tons of blended dry cement consisting of Portland Cement and other materials.[72] Defendant's personnel used a pressure operated system to blow the product onto the back of Defendant's property.[73] The Material Safety Data Sheet for the cement described skin and respiratory irritation from exposure to the material. Defendant acknowledged that forming a cement pad was an afterthought, "So during the entire event, as the guys

---

[70] *Maddox v. Hardy*, 187 P.3d 486 (Alaska 2008).
[71] *Dietzmann v. City of Homer*, No. 3:09-CV-00019-RJB, 2010 WL 4684043, at *26 (D. Alaska Nov. 17, 2010), *aff'd sub nom. Dietzmann v. Hutt*, 479 F. App'x 108 (9th Cir. 2012) (citing *Hayes v. Xerox Corp.,* 718 P.2d 929 (Alaska 1986)).
[72] Aff. Stephen P. Laitinen, Ex. 1, p. 2.
[73] Depo. Jason Goodwin, p. 32, l. 20 – p. 34 l. 5; p. 35, l. 1 – p. 36, l. 17; p. 51, l,18 – p. 52, l.10; p. 94, ll. 5-24.

14

are blowing the material out onto the ground, one of them decided they would go - - I wouldn't say one of them . . . But they decided to spray water on the pile in order to try to get it to set up."[74] AEDC determined that the dumping was not an environmental threat but did pose an air quality issue.[75] In addition to solid waste, "4 [cubic yards] of silica sand and 15 [cubic yards] of cement powder were collected and placed in super sacs."[76] This evidence, taken with all reasonable inferences in favor of the non-movant, is sufficient for the punitive damages claim to survive summary judgment.

### V. CONCLUSION

For the reasons above, Defendant's motion for summary judgment at docket 66 is DENIED.

DATED this 30th day of July 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[74] Depo. Jason Goodwin, p. 109, ll. 15-20.
[75] Memo. In Support of Motion *in Limine*, Ex. 7.
[76] *Id.*

15